**GOVERNMENT OF the VIRGIN ISLANDS**

v.

**Antonio QUINONES.**

**GOVERNMENT OF the VIRGIN ISLANDS**

v.

**Albert WASHINGTON.**

**Crim. Nos. 62–1968, 63–1968.**

District Court, Virgin Islands
D. St. Croix.

July 15, 1969.

Almeric L. Christian, U. S. Atty., St. Thomas at Charlotte Amalie, Virgin Islands, for plaintiff.

Vincent A. Gamal, Christiansted, St. Croix, Virgin Islands, for defendant, Antonio Quinones.

John F. James, Christiansted, St. Croix, Virgin Islands, for defendant, Albert Washington.

## OPINION AND ORDER

CLARY, District Judge (Sitting by Special Designation).

The facts which give rise to these cases are as follows: At approximately 6:30 P.M. on July 20, 1968, defendant, Antonio Quinones, was driving west on Centerline Road toward Fredericksted, St. Croix. At the same time, defendant, Albert Washington, was driving east on Centerline Road toward Christiansted, St. Croix, with passengers in his car. The evidence presented at the trials clearly indicated that Quinones' vehicle was in its proper left lane and that Washington veered his car over the center line of the road causing an impact with Quinones' auto at least one foot beyond the white dividing line at that point. The conclusion is inescapable, therefore, that Quinones was driving in his proper lane and that Washington was the proximate cause of the accident. As a result of the collision, one of the passengers in Washington's car died.

According to witnesses at the scene, Quinones was knocked unconscious and Washington appeared to be in a stuporous condition; both men were removed to the hospital within the hour. The investigating officer arrived at the scene of the accident at or before 8 P.M., and after completing her inspection, reached the hospital about 9:45 P.M. Quinones was stil unconscious and Washington was in the same stuporous condition. The examining Doctor had noted on the hospital chart that further examination of Quinones should be had to rule out the possibilities of brain concussion and alcoholism. His stuporous condition unchanged, Washington was not questioned in the hospital by the investigating officer because each time she attempted to talk to him, he would appear to doze off.

In this factual setting, the officer directed the hospital physician to take a blood sample from each of the men; this was accomplished between 10:30 and 11 P.M. These blood samples were sent to Puerto Rico for processing and each revealed a content of alcohol by volume of .012%. Over the objections of the defendants at their trials, the Court admitted into evidence the testimony of a well-experienced toxicologist pertaining to the results of said tests as outlined above. He also added that the amount of alcohol in a person's blood decreases .002%

per hour after his last drink, and since the time lapse between the accident and the taking of the blood specimens was at least four hours, he concluded that the amount of alcohol in each man's blood exceeded .015% at the time of the accident. The Court based its ruling of admissibility on the grounds that intoxication was an indispensable element of the crimes with which the defendants were charged. Washington was tried to a jury which convicted him of negligent homicide [1], and Quinones was tried to the Court and was found guilty of operating a motor vehicle in an intoxicated condition.[2]

These cases are presently before the Court on the respective motions of each defendant for a judgment of acquittal or, in the alternative, for a new trial. The basis for these motions is that the testimony relating to the results of the blood tests should not have been admitted into evidence since the blood samples were taken in violation of the constitutional rights of the defendants.

As was indicated above, the provisions relating to the operation of a motor vehicle in an intoxicated condition are contained in 20 V.I.C. § 493. For the purpose of deciding these motions, however, the only portions relevant are subsections (b) and (d).[3] The initial question which arises upon an examination of the statute as it relates to the facts of these cases

1. "§ 504. Negligent homicide by means of motor vehicle. When the death of a person ensues within one year as a proximate result of injury received by the operation of a vehicle by any person while under the influence of or affected by intoxicating liquor or narcotic drugs or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the persons so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle. Any person convicted of negligent homicide by means of a motor vehicle shall be punished by imprisonment for not more than five years, or by a fine of not more than one thousand dollars, or by both such fine and imprisonment." 20 V.I.C.

2. "Section 1. Section 493 of Title 20 of the Virgin Islands Code is hereby amended to read as follows:
   '(a) Whoever operates a motor vehicle while in an intoxicated condition or while his ability to operate such motor vehicle is impaired by the use of a drug as hereinafter defined shall be guilty of a misdemeanor and shall be punishable by imprisonment for not more than one year, or by a fine of not more than five hundred dollars, or by both.'"

3. Section 493 Virgin Islands Code: "(b) Upon the trial of any action or proceeding arising out of acts alleged to have been committed by any person arrested for operating a motor vehicle while in an intoxicated condition or while ability to operate is impaired by the consumption of alcohol, the court may admit evidence of the amount of alcohol in the defendant's blood taken within two hours of the time of the arrest, as shown by a medical or chemical analysis of his breath, blood, urine, or saliva. For the purposes of this section (a) evidence that there was, at the time five hundredths of one per centum, or less, by weight of alcohol in his blood is prima facie evidence that the defendant was not in an intoxicated condition; (b) evidence that there was, at the time, more than five-hundredths of one per centum and less than fifteen-hundredths of one per centum by weight of alcohol in his blood is relevant evidence, but it is not to be given prima facie effect, in indicating whether or not the defendant was in an intoxicated condition; (c) evidence that there was, at the time, ten hundredths of one per centum, or more, by weight of alcohol in his blood, may be admitted as prima facie evidence that the defendant's ability to operate a motor vehicle was impaired by the consumption of alcohol; (d) evidence that there was, at the time, fifteen-hundredths of one per centum, or more, by weight of alcohol in his blood, may be admitted as prima facie evidence that the defendant was in an intoxicated condition."
   "(d) Any person who operates a motor vehicle in the Virgin Islands shall be deemed to have given his consent to a chemical test of his breath, blood, urine, or saliva for the purpose of determining the alcoholic or drug content of his blood provided that such test is administered at the direction of a police officer having reasonable grounds to believe such person to have been driving in an intoxicated condition or, while his ability to operate such motor vehicle was impaired by the consumption of alcohol or the use of a drug. If such person having been placed under arrest and having thereafter been requested to submit to such chemical test refuses to submit to such

is whether the time lapse between the accident and the taking of the blood samples renders the results thereof inadmissible for any reason. The only time limit set out in the statute itself appears in subsection (b) wherein it provides: * * the Court may admit evidence of the amount of alcohol in the defendant's blood taken *within two hours of the time of arrest * * ** " (emphasis supplied).

■■ Even though formal warrants for the arrest of the defendants were never issued and even though defendant Quinones was unconscious and defendant Washington was in a drunken stupor from the time the officer arrived at the hospital throughout the proceedings that followed that night, there is no problem in finding that both men were under arrest from the moment the police investigator arrived at the hospital. From that moment on, having been identified as the drivers in the accident under investigation, both men were in the custody and control of the police; and there is little doubt that if either of them had sufficiently regained his senses to make an attempt to leave, he would have been restrained from so doing. Recent Supreme Court decisions in this area of criminal law have made it abundantly clear that once a defendant is deprived of his freedom in any significant way, he is in custody and for all intents and purposes "under arrest". See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964). In the opinion of the Court, therefore, Washington and Quinones were under "arrest" within the meaning of 20 V.I.C. § 493(b).

Since it was established that the investigating officer arrived at the hospital at approximately 9:45 P.M., and that the blood samples were taken between 10:30 and 11 P.M., it follows that the blood was taken "within two hours of the time of the arrest" as prescribed by the statute and as the Court has interpreted the meaning thereof. And no argument can be made that the defendants were prejudiced by the long delay between the accident and the taking of the blood specimens, or that such a delay destroyed the relevance of the results thereof, since expert testimony established that alcoholic content of their blood could only have been *greater* as the time the samples were taken and the time of the accident became more proximate.

Another far more serious and difficult issue is raised by the procedures employed by the police in obtaining the blood samples of the defendants. Specifically, our attention is directed to whether in so doing the police violated the defendants' constitutional rights as guaranteed by the 4th, 5th and 6th Amendments.

■ Addressing these questions separately for the sake of clarity, the Court finds that any argument based on an alleged violation of the 5th Amendment rights in such a factual setting as is presented here is controlled by the Supreme Court decision in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed. 2d 908 (1966). One aspect of the holding of that case was that the 5th Amendment privilege against self-incrimination is not violated by the taking of a blood sample from a defendant. The Court based its decision on the rationale that there was not a shadow of compulsion on the defendant to testify against himself and that the evidence thus obtained was not of a testimonial or communicative na-

chemical test, the test shall not be given, but the Commissioner shall revoke his license, or permit to drive and any non-resident operating privilege; Provided, however, the Commissioner shall grant such person an opportunity to be heard but a license, permit or nonresident operating privilege may, upon the basis of a sworn report of the police officer that he had reasonable grounds to believe such arrested person to have been driving in an intoxicated condition or, while his ability to operate such motor vehicle was impaired by the consumption of alcohol or the use of a drug as defined in this chapter, and that said person had refused to submit to such test, be temporarily suspended without notice pending the determination upon any such hearing."

ture. Since no factual distinction has been offered to remove these cases from the *Schmerber* holding, the argument that the 5th Amendment rights of Washington and Quinones were violated by the blood samples taken from them must be rejected.

Turning to defendants' second point, namely, that the obtaining of the blood test constituted an unreasonable search and seizure, and hence a violation of their 4th Amendment rights, the Court once again finds this avenue closed to the defendants by the Supreme Court opinion in Schmerber v. California, supra. In discussing the 4th Amendment phase of the case, the Court conceded that there were substantial interests of privacy involved and that the defendant's right to be free from unreasonable searches and seizures applied to the withdrawal of his blood. However, the Court decided that when the facts of the case reveal probable cause for a defendant's arrest, those same factors establish probable cause which justify police in requiring defendant to submit to the blood test. In addition, the Court noted that the blood test in question was an effective means of measuring intoxication, involved virtually no risk to the defendant, and was performed by a physician in a hospital. Taking all these factors into consideration, the Court concluded that there had been no violation of defendant's 4th Amendment rights.

█ Here again, the Court has been unable to discover any fact or circumstance which would take these cases outside the reach of the *Schmerber* decision. Nor have the defendants advanced any such distinction on their own behalf. Therefore, the defendants' argument based on the alleged violation of their 4th Amendment rights is without merit and must also be dismissed.

█ Before passing to the defense based on 6th Amendment rights, the Court notes in passing that the conclusion reached regarding 4th Amendment rights and blood tests is not altered in the case of Quinones merely because he

was unconscious at the time. The Supreme Court has also spoken on this issue and has held that the right of an individual to be free from such bodily invasions as are involved in a properly conducted blood test is far outweighed by the value of the deterent effect on the public and, hence, the results of such tests may be used as evidence even when the subject had been unconscious. Breithaupt v. Abram, Warden, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957).

The third and final argument of a constitutional nature raised by the defendants is that the blood tests as administered to them violated their rights to effective counsel. This point was also discussed in the *Schmerber* case, wherein the defendant had strenuously objected to the taking of the blood test and had done so on the advice of counsel. Nevertheless, the blood samples were taken, and the Supreme Court held there had been no infringement or denial of rights guaranteed by the 6th Amendment. The rationale for this portion of the Court's holding was that under the California statute an arrested person had no right to refuse to submit to such a test, and he could not acquire this right merely by his counsel advising him to assert it. It is rather obvious then that the most important fact from the Court's point of view was that the California statute did not grant the person under arrest any option to refuse to submit to such a test. Since it was mandatory, advice of counsel was irrelevant.

In marked contrast to the content of the California statute, the Blood Test Act of the Virgin Islands contains very specific language granting the arrested party the option and the right to refuse to undergo the blood test; and the statute is also very clear that if he so refuses, no blood sample is to be taken: "If such person having been placed under arrest and having thereafter been requested to submit to such chemical test refuses to submit to such chemical test, *the test shall not be given* \* \* \*" 20 V.I.C. § 493(d) (emphasis supplied). Using the same rationale employed by the Su-

preme Court in *Schmerber*, but with one significant factor changed as set out above, *it is obvious that once a defendant is granted the option to refuse to submit to such a test, the presence and advice of counsel are no longer irrelavant.* Full undertanding of this right and of the counsel are no longer irrelevant. Full decision made regarding this right make the presence of counsel a necessity if the dictates of the 6th Amendment and the intent of the Virgin Islands Legislature are to be honored.

■■ It follows from the foregoing that before a blood test may be administered under the authority of 20 V.I.C. § 493, the subject must be specifically informed of his right to refuse to submit to such a test; that the results of such test, if taken, can be used against him in Court; and that he has the right to consult with a lawyer in making his decision. Failure to do so before the administration of the test would vitiate any consent given by the defendant, and where a test is administered without the advice of counsel, a heavy burden rests on the Government to demonstrate that the defendant knowingly and willingly waived his right to counsel.

■ There has been no contention by the Government that the defendants herein ever waived their rights or consented to the tests in question since one defendant was drunk and the other unconscious at the critical time period. In this factual setting, therefore, the Court finds that there was no violation of the defendants' 4th or 5th Amendment rights (*Schmerber* still being good law in these areas and under these facts), but that there was a violation of the defendants' 6th Amendment rights since they were never fully informed of their rights under the statute or permitted to consult with an attorney.

### ORDER

And now, to wit, this 15 day of July, 1969, for the reasons set out in the foregoing Opinion, it is ordered, adjudged and decreed that the convictions of de-

fendants, Antonio Quinones and Albert Washington, be and they are hereby vacated; that new trials be awarded the defendants; and that the respective motions for judgment of acquittal be and they are hereby denied.